UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 1:15-cr-043 |
| Plaintiff | |
| vs. | Judge Michael R. Barrett |
| MARTELL LOWRY | |
| Defendant | |

**OPINION AND ORDER**

This matter is before the Court following an evidentiary hearing and argument upon Defendant's Motions to Suppress (1) Evidence Obtained From Facebook User ID (Doc. 24), (2) Evidence Based on Overbroad Search Warrant (Doc. 25), and (3) Evidence Obtained From Unlawful Arrest (Doc. 26), the Government's response thereto (Docs. 37-38), and Defendant's Reply to Government's response (Doc. 40). Defendant moves to suppress all evidence obtained from the searches of Facebook User ID #100008652697108 (hereinafter "Facebook") and statements following his alleged unlawful arrest. Defendant argues that the searches conducted and evidence seized were in violation of the Fourth Amendment of the United States Constitution.

**FACTS**

At the hearing, the United States elicited the testimony of Donald Minnich, Federal Bureau of Investigation (FBI) Task Force Officer (TFO)/Detective with the Greater Cincinnati ICAC Task Force; James Whalen, FBI agent; and Paul Pape, FBI polygraph examiner. Deputy

1

Minnich testified that he is a detective with the Hamilton County Sheriff's Office assigned to the FBI Child Exploitation Task Force. He outlined his duties and experience as an investigator.

In December 2014, Deputy Minnich was contacted by Detective Doug Todd from the Hamilton County Sheriff's Office, who requested assistance in an investigation. It was determined that a fourteen year old male, identified as "DT," had been contacted through Facebook messenger by a Marty Lowry. As part of this Facebook contact and interplay, messages were sent between DT and Marty Lowry involving the suggestion of an exchange of money for sexual pictures. (*See generally* Affidavit in Support of Search Warrant (Facebook), ¶ 7). Officers were also aware that a Detective Nichols from the City of Hamilton Police Department was reviewing similar contact between a twelve year old, identified as "CR," and Marty Lowry. This contact involved sexual activity and, perhaps, a suggested exchange of controlled substances. (Facebook Aff., *supra* ¶ 8). By using general Facebook information, officers were able to determine that the above contacts (other than Marty Lowry) were under the age of eighteen. Officers then used this information to obtain a search warrant for the Facebook account associated with Marty Lowry (Facebook User ID #100008652697108). Upon review of that information, officers next obtained a search warrant for 791 Van Buren Avenue, Apartment 3, Cincinnati, Ohio, 45215, the resident address of the aforesaid Facebook user, Martell "Marty" Antonio Lowry. In their Affidavit in Support of Search Warrant (791 Van Buren Avenue), officers laid out, in detail, their efforts and reasons to believe that the Facebook activities of Lowry included violations of 18 U.S.C. §§ 2251, 2252, 2252(a), and 2422. In addition to the information, which was previously contained in the Facebook search warrant, the officers supplied information from Marty Lowry's Facebook account demonstrating numerous

communications with juveniles between the ages of twelve and seventeen years old, including requests to engage in oral sex for hire or self-taken photographs.

On April 3, 2015, Special Agents (SA) and TFOs with the FBI placed the premises of 791 Van Buren Avenue under surveillance and then entered the residence shortly after 6:00 A.M. with the properly obtained search warrant for the residence. Upon entry of the residence, FBI agents encountered approximately six people in the apartment. One of the individuals appeared to be reaching for something or placing something under a couch cushion. (Doc. 38). The individual was handcuffed and moved to the kitchen. (Doc. 38). This individual was later identified as the Defendant, Martell "Marty" Lowry. (Doc. 38). Lowry, along with the other individuals present, remained handcuffed until the premises were secured for safety reasons; the handcuffs were then removed by agents. (Doc. 38). After being advised of who the agents were and why they were there, Lowry agreed to ride with agents to the FBI Field Office in Cincinnati. (Doc. 38). At the office, agents advised Lowry of his rights, "*Miranda* warnings," which Lowry acknowledged on a FBI Advice of Rights form at approximately 7:16 A.M. (Doc. 38, Att. A).[1] Lowry was then interviewed by agents. Following that conversation, Lowry was once again advised of his rights, which Lowry acknowledged on a second FBI Advice of Rights form. (Doc. 38, Att. B). At approximately 8:46 A.M., Agent Pape conducted a polygraph interview. On both Advice of Rights forms, Lowry indicated that he had read the form's content and was willing to answer questions without a lawyer present. Lowry now seeks to suppress any and all evidence seized from his Facebook account, his residence, or as a result of his interviews with FBI agents.

---

[1] The initial conversation between agents and Lowry, where agents advised Lowry of his rights, Lowry acknowledged and waived his rights, and was subsequently interviewed by agents, was video recorded viewed by the Court during the hearing.

3

**ANALYSIS**

The Fourth Amendment of the United States Constitution reads as follows: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause…" U.S. Const. amend IV. Martell Lowry (hereinafter "Defendant"), claims that his Fourth Amendment rights were violated by the government in the search of Facebook and through an alleged unlawful arrest. Defendant asserts that any and all evidence, including statements, seized pursuant to a search warrant for information from Facebook and following an alleged unlawful arrest should be suppressed.

**A. Search Warrant for Facebook (User ID #100008652697108)**

The Fourth Amendment requires that a warrant state with particularity the place to be searched and the items to be seized. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Moreover, where an affidavit is submitted as the basis for probable in support of a search warrant, the affidavit "must provide the magistrate with a substantial basis for determining probable cause." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (quoting *Gates*, 462 U.S. at 239).

*a. The Facebook ID established a nexus sufficient for probable cause*

An affidavit "must establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison v. Balinksi*, 625 F.3d 953, 958 (6th Cir. 2010). Probable cause has "repeatedly been defined in terms of the facts and circumstances known to the officers at the time of the search." *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994). It is only necessary that an issuing officer find "reasonable grounds for belief that evidence will be found

in order to justify the issuance of a warrant." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

Defendant contends that the affidavit attached to the search warrant failed to establish how the affiant knew that this particular Facebook User ID would contain evidence of a crime (Doc. 24). However, the affidavit's introductory section states that a person using a particular Facebook User ID was suspected of committing the crime of coercion and enticement. (Facebook Aff., *supra* ¶¶ 5-8). The affidavit cites with particularity two specific instances of Defendant's solicitation of juvenile boys through the Facebook account of "Marty Lowry" via Facebook messenger. (Facebook Aff., *supra* ¶¶ 7-8). Therefore, the affiant had probable cause to believe that evidence of a crime would be found on Defendant's Facebook account. *See e.g., Steadgald v. United States*, 451 U.S. 204, 212-13 (1981).

      b. *The search warrant was not overbroad*

The Supreme Court has stated that a search warrant "must particularly describe the things to be seized." *See Gates*, 462 U.S. at 238. The description, however, whose specificity will vary with the circumstances of a particular case, will be valid if the description is as specific as the circumstances and nature of the activity under investigation. *See Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001). Defendant argues that the search warrant was overbroad and there was no evidence in the affidavit to support a search of the Facebook account for information related to the distribution, receipt, or possession of child pornography in violation of 18 U.S.C. § 2252(a). There is no evidence to suggest the search warrant was overbroad; there is evidence in the affidavit to support a search for child pornography.

The search warrant served on Facebook was limited to content between October 2014 and February 2015, per the request made in the affidavit. The affidavit cited that October 15,

5

2014 was the initial date that Defendant began communicating with a 14-year old boy who Defendant soon thereafter solicited for sex. (Facebook Aff., *supra* ¶ 7). Defendant argues that because the search warrant sought information from Facebook including all communications between any user or recipient and the substance of those communications, the request was "significantly overbroad" and the government should have been limited to information related to the two minor victims listed in the affidavit. (Doc. 25). Defendant, however, cites no authority in support of this proposition.

Defendant points to a Sixth Circuit decision holding that evidence related to child molestation in an affidavit does not support a search of electronic media for child pornography. *See United States v. Hodson*, 543 F.3d 286, 290-92 (6th Cir. 2008). Defendant's reliance upon *Hodson* is misplaced, however, since the charges in that case were limited to child molestation. Here, Defendant is accused of committing crimes (coercion and enticement) *through* his Facebook account; the medium used to commit the crime and the exact place searched—Defendant's Facebook account—are identical. The affidavit specifically mentions the communications between Defendant and two different juvenile boys. (Facebook Aff., *supra* ¶¶ 7-8). With one, Defendant specifically asked the boy the send him a picture of the outline of his penis through his boxer shorts; the other, Defendant offered to send "pussy pics." (Facebook Aff., *supra* ¶¶ 7-8). Depending on the nature of the photo in the first instance and the age of the person depicted in the second, either could support a charge of distribution of child pornography. Accordingly, there were reasonable grounds for belief that evidence of criminal activity would be found to justify the issuance of the warrant.

    *c. The search warrant contained probable cause for search of child pornography*

  Nevertheless, Defendant also contends that neither the picture he requested from the boy of the outline of his penis through his boxer shorts nor the offer of "pussy pics" support probable cause to believe that Defendant had pictures of children engaging in "sexually explicit conduct" as defined in 18 U.S.C. § 2256 (2)(B)(iii).[2] Defendant cites a Fourth Circuit opinion to bolster his argument that there was insufficient probable cause to support the issuance of the warrant in this case. *See United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011). In *Doyle*, officers obtained a warrant for a residence for child pornography where the defendant had abused three children. The basis for the search was evidence that the defendant had shown one of the victims "pictures of nude children." *Id.* at 472. The court held the allegations was insufficient for probable cause to search for child pornography because not all nude pictures of children are necessarily child pornography. *Id.* at 473. Defendant argues that based on this holding, a picture of a boy in his boxer shorts and "pussy pics" are insufficient probable cause to justify issuance of a search warrant. (Doc. 40). The circumstances here are different, however, than those in *Doyle*. In *Doyle*, the court noted that the only mention in the warrant application regarding the presence of pornography was a statement that one of the alleged victims "disclosed to an uncle that Doyle [the defendant] had shown the victim pictures of nude children." 650 F.3d at 472. Moreover, the officer that had drafted the affidavit testified that none of the alleged child victims made allegations to law enforcement that they were shown pornographic material. *Id.* Here, the evidence set forth in the affidavit is not merely a disclosure to an informant regarding pictures but rather specific information derived from Defendant's Facebook account where he had contacted juvenile boys either asking for or offering pictures. (Facebook Aff., *supra* ¶¶ 7-8). It is

---

[2] 18 U.S.C. § 2256 (2)(B)(iii) defines "sexually explicit conduct" as to include the "graphic or simulated lascivious exhibition of the genitals or pubic area of any person."

7

the specificity in this case that renders it distinguishable from the vague accusations in *Doyle*—the evidence is that Defendant *asked* a juvenile for sexually-oriented pictures, different than the defendant in *Doyle* who allegedly only *showed* pictures. 650 F.3d at 472. In light of the totality of the circumstances set forth in the affidavit, there was sufficient probable cause and a reasonable basis to search Defendant's Facebook account for child pornography that had been identified by investigators as a vehicle to coerce juveniles to engage in illegal sexual acts.

Therefore, probable cause existed at the outset of the investigation, and justified the search warrant for the Facebook account for the specified time frame set forth in the affidavit. Moreover, although the affidavit only names coercion and enticement, the evidence in the affidavit itself supports probable cause for searches for child pornography.

        d.   The Good Faith Exception

"[Searches] pursuant to a warrant will rarely require any deep inquiry into reasonableness." Gates, 462 U.S. at 276. (White, J., concurring). Moreover, a "warrant issued by a magistrate normally suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search." *See U.S. v. Leon*, 468 U.S. 897, 922 (1984) (quoting *United States v. Ross*, 456 U.S. 798, 823, n. 32 (1982)). Evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant should not be suppressed. *See e.g.*, *Leon* 468 U.S. at 922.

The Sixth Circuit, in an attempt to clarify the good faith inquiry, has identified four specific situations in which an officer's reliance on a subsequently invalidated warrant cannot be considered objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police

8

activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that is cannot be reasonably presumed to be valid. *See United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). The first of the two situations are not at issue in the case at bar; what is left for the Court to determine is whether the evidence itself supports a reasonable and valid basis for probable cause and is not merely the product of a "bare bones affidavit." *See e.g., Laughton*, 409 F.3d at 749. Assuming, arguendo, that the affidavit is found deficient for failing to establish probable cause, the Court must then consider whether the Deputy had a reasonable basis to believe that the information submitted supported the issuance of the search warrant. *See United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004).

In the matter before the Court, there is substantial evidence to suggest the Deputy acted in good faith and upon a reasonable basis in executing the search warrant. First, the affidavit, identifying that Defendant had contacted multiple boys using his Facebook account for the purposes of soliciting unlawful sex, illustrated a fair and reasonable probability that evidence of criminal conduct would be found on Defendant's Facebook account. The affidavit established the requisite nexus between the place searched (Defendant's Facebook account) and the facts of criminal activity (coercion and enticement through Facebook messages). Additionally, the affidavit established that Defendant had contacted each of the boys on more than occasion in his efforts to coerce them. (Facebook Aff., *supra* ¶¶ 7-8). The affidavit identifies with specificity the contact between the Defendant and the juvenile boys. In light of this evidence, an objective law enforcement officer or magistrate judge reviewing the affidavit would have concluded that it contained sufficient evidence to establish probable cause. There is no evidence in this case that either the affiant or the magistrate judge acted in bad faith or engaged in any impermissible

behavior. Therefore, the exclusionary rule does not apply and the evidence in this matter should not be suppressed. The Court DENIES Defendant's Motions to Suppress evidence obtained from Defendant's Facebook account (User ID #100008652697108).

**B. Evidence Obtained as a Result of Alleged Unlawful Arrest**

The purpose of the Fourth Amendment is not to eliminate all contact between the police and citizenry, but to "prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)).

*a. The Defendant was not arrested prior to being taken to be interviewed*

A person is arrested when, "by means of physical force or show of authority, his freedom of movement is restrained." *See Mendenhall*, 446 U.S. at 553. The Sixth Circuit has considered certain factors relevant to a determination of whether a defendant is under arrest for Fourth Amendment purposes including, "'the transportation of the detainee to another location, significant restraints on the detainee's freedom of movement involving physical confinement or other coercion preventing the detainee from leaving police custody, and the use of weapons or bodily force.'" *See e.*g*., United States v. Shaw*, 464 F.3d 615, 621 (6th Cir. 2006).

In this case, Defendant argues that upon agents' arrival at his residence, Defendant was immediately arrested by agents and detained in custody during the course of the search warrant's execution. (Doc. 26). Defendant also asserts that the agents had no probable cause to believe that Defendant had committed a crime that justified an arrest. (Doc. 26). However, based on the evidence and testimony of Deputy Minnich, Defendant's assertions fail on two counts. First, Defendant was only temporarily placed in handcuffs for failing to stay in one place (as was asked by agents until the residence was secured by agents) and making a sudden movement to a couch

in an attempt to reach under a cushion. (Doc. 38). Agents then removed the handcuffs from Defendant and advised him of who they were, why they were there, and asked whether Defendant would speak to them. (Doc. 38). Defendant agreed and was taken to the FBI Field Office in Cincinnati. (Doc. 38). Here, there were no significant restraints on Defendant's freedom of movement involving physical confinement and there is no allegation that the officers engaged in coercive, forceful, or threatening conduct. (Doc. 38). Second, even assuming, arguendo, that the temporary restraint of Defendant could constitute an arrest, the FBI and its agents have the power to make arrests absent a warrant on the reasonable grounds that a defendant had committed or was committing a criminal act.[3] Thus, the search warrant itself was sufficient probable cause for an arrest, although based upon the facts, an arrest did not occur during the execution of the search warrant.

    *b. The Defendant was read his Miranda warnings and waived them in writing*

  The Supreme Court has stated, in dealing with custodial interrogation, that it is not presumed that a defendant has been "effectively apprised of his rights and that his privilege against self-incrimination has been adequately safeguarded on a record that does *not* show that any warnings have been given or that any effective alternative has been employed." *See Miranda v. Arizona*, 384 U.S. 436, 477 (1966) (emphasis added). In this case, Defendant was read his *Miranda* rights and waived them in writing prior to both interviews with FBI agents (Doc. 38, Atts. A-B). The dispute of whether or not Defendant was under arrest from the time the search warrant was executed is inconsequential; Defendant was read and acknowledged his *Miranda* warnings twice and waived his rights on both occasions. The first interview with Defendant was video recorded, which the Court viewed during the hearing. There was no evidence of coercive

---

[3] 18 U.S.C. § 3052 gives the FBI, and its agents, the power to "make arrests without warrant for any offense against the United States . . . if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony." (Doc. 38).

11

conduct. There was neither indication nor allegation by Defendant that the waiver of rights was executed while under threat or duress. The evidence overwhelmingly supports the government's proposition that the statements were made voluntarily and of Defendant's own free will. Moreover, Defendant himself does not attest to any specific threat or promise made by either agent during the course of events. (Doc. 38). After making his statements to FBI agents, Defendant was placed under arrest. (Doc. 38). Prior to making his initial appearance before the magistrate judge, a criminal complaint was filed and an arrest warrant issued, as is permitted by statute. (Doc. 38). Therefore, in light of the evidence, there is no basis to suppress the statements given by Defendant as he was properly informed of his rights and waived his rights of his own volition. The Court DENIES Defendant's Motion to Suppress statements and evidence taken from Defendant.

## CONCLUSION

Accordingly, Defendant's Motions to Suppress (Docs. 24, 25, and 26) are DENIED consistent with this Opinion and Order.

    _s/Michael R. Barrett_____
MICHAEL R. BARRETT, Judge
United States District Court